**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MIRANDA GUY,

      Plaintiff,

            v.

BOARD OF EDUCATION ROCK HILL
LOCAL SCHOOL DISTRICT, et al

      Defendants.

Case No. 1:18-cv-893

Bowman, M.J.

**MEMORANDUM OF OPINION AND DECISION**

This civil action is now before the Court on Defendants Rock Hill Local School District Board of Education ("Rock Hill" or "Board"), David Hopper, Thomas Robinson, Mark Harper, Keith Harper, Dennis Hankins, Paul David Knipp, and Keith Roth ("Individual Defendants") motion to dismiss Plaintiff's amended complaint  (Doc. 18) and the parties responsive memoranda. (Docs. 24, 25).   The parties have consented to disposition of this matter by the Magistrate Judge.

    **I.**    **Background and facts**

 For over 12 years, Plaintiff was employed as the secretary to the superintendent of Rock Hill Local School District Board of Education.  (Doc. 13).  While working under a continuing contract of employment, Plaintiff was placed on administrative leave beginning on September 19, 2017. (Doc. 13).  Plaintiff claims that her ex-husband, Defendant Jason Guy, provided "highly defamatory" and "false information" to the Board prompting the administrative leave.  Plaintiff's complaint alleges in relevant part:

    10. Defendants had placed Plaintiff on administrative paid leave on September 19, 2017 for reasons that were not stated.  Based upon

information and belief, Plaintiff asserts that Defendant Jason Guy, her estranged husband, had provided highly defamatory, false information to Defendant prompting them to force her to resign in December of 2017. Defendant Jason Guy's appalling, false allegations were that Plaintiff had sent nude photos of herself to students in the Rock Hill Local School District, some of whom were alleged to be minors, and that she had exchanged sexual social media messages with these students; there was no sexual conduct alleged. One of the students involved in these allegations was the grandson of the Defendant Board President Dennis Hankins.

11.  In reality, Plaintiff had posted family vacation beach photos on social media.  One or more of the students reacted to the family beach photos by sending inappropriate messages through Instagram and Snap Chat. Upon information and belief, Plaintiff asserts that Defendant Jason Guy conspired with these students to fabricate allegations against Plaintiff.

12.  Defendants never contacted Plaintiff to inquire about these malicious, false allegations.  Defendants never asked Plaintiff for an explanation, and never gave her an opportunity to provide any defense to these allegations. Rather, Defendants placed her on administrative leave on September 17, 2017, and contacted Lawrence County Child Protective Services ("LCCPS") who in turn, subjected her to humiliation of finding of substantiated abuse without ever interviewing her or any witness on her behalf; that finding is still under appeal.  On September 21, 2017 Defendant Jason Guy filed for divorce, seeking custody of their son.  The Board replaced Plaintiff by Defendant Jason Guy's sister, who assumed those duties on July 1, 2018.

(Doc. 13, ¶¶ 10-12)

While on administrative leave, the Board banned Plaintiff from District property and school events. *Id.* ¶ 14.  Plaintiff alleges that on December 18, 2017, she discussed her employment with the Board's counsel. Id. at ¶ 15. Plaintiff alleges that Board counsel informed her that she would be terminated for violating the Board's social media policy if she did not resign by December 19, 2017.  (Id).  Plaintiff further alleges that she "stated that she could resigned if the ban prohibiting her from attending her son's school event was ended; Defendants, acting through counsel, assured Plaintiff that they would end the ban." Id.

On December 20, 2017, Plaintiff resigned her employment with Rock Hill. (Id.).  At a board meeting later that day, the Board in open session voted to accept Plaintiff's resignation.  Id.  At the same meeting, the Board voted to adopt Board Resolution 294-2017 which banned Plaintiff from District Property and School functions until further written notice with prior board approval. Id.  Plaintiff claims that she was not notified of the Boards vote to ban her until February 14, 2018.  Id.

Plaintiff further alleges that Thomas Robinson, Rock Hill's Treasurer, failed to forward COBRA information to her after she resigned.  Id. at ¶ 19.

Thereafter, Plaintiff filed the instant action. Plaintiff's complaint asserts the following causes of action against Defendants:

1. Violation of 1983 claim, Fundamental Parental Rights

2. Procedural and Substantive Due process

3. Constructive Discharge from Employment

4. Wrongful Discharge

5. Breach of Contract

6. COBRA Violation

7. Defamation

8. Intentional Infliction of Emotional Distress

9. Violation of §1983, First Amendment – Freedom of Association

10. Violation of §1983, First Amendment – Freedom of Association Unconstitutional Law, Custom or Policy

11. Violation of Violation of §1983, First Amendment – Freedom of Speech

12. Violation of §1983, First Amendment – Freedom of Speech Unconstitutional Law, Custom or Policy

13. Bad Faith Breach of Contract

14. Fraudulent Inducement

15. Declaratory Judgment

16. Mandamus

(Doc. 13).

Defendants now seek to dismiss claims 1-6 and 8-16 against the individual defendants. The Board also seeks an order dismissing claims 1-5 and 8-16. As detailed below, Defendants' motion is granted, in part, and denied, in part.

## II. Analysis

### A. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the claims. The court is required to construe the complaint in the light most favorable to the Plaintiff, and accept all well-pleaded factual allegations in the complaint as true. See *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). A court, however, will not accept conclusions of law or unwarranted inferences which are presented as factual allegations. *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1974). A complaint must contain either direct or reasonable inferential allegations that support all material elements necessary to sustain a recovery under some viable legal theory. *Lewis v. ACB*, 135 F.3d at 405 (internal citations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *Association of Cleveland Fire*

*Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

### B. Plaintiff's Federal claims

*1. Section 1983 Claim, Fundamental Parental Rights and Due Process Claims (Counts 1 and 2)*

Plaintiff claims that Defendants violated her fundamental right "as a parent to make decisions concerning the care, custody, and control of her son" by banning her from Rock Hills owned property and school functions, with no notice and no opportunity to be heard. Plaintiff further contends that she was denied procedural due process for her property rights when the Board interfered with her employment by forcing her to resign without just cause and without rational basis. Plaintiff's contentions will be addressed in turn.

To state a § 1983 claim, plaintiff must allege (1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) the deprivation was caused by a person acting under color of state law. *See Hines v. Langhenry*, 462 Fed. Appx. 500, 503 (6th Cir.2011) (citing *Boykin v. Van Buren Twp.*, 479 F.3d 444, 451 (6th Cir.2007); *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir.2003)).

It is well established that the right of a parent to make decisions regarding the care, custody and control of their children is a fundamental right. *Troxel v. Granville,* 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (citing *Meyer v. Nebraska,* 262 U.S. 390, 399–401, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) ("The liberty protected by the Due Process Clause includes the right of parents to 'establish a home and bring up children' and 'to

control the education of their own.'")). Nonetheless, it is equally well established that this right is not without limits. *Blau v. Fort Thomas Public School District,* 401 F.3d 381 (6th Cir.2004) (citing *Troxel v. Granville,* 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) ("The liberty interest ... of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized by this Court.")).

Under the Ohio Revised Code, local school boards are responsible for "managing the myriad of day-to-day problems that typically surface in the operation of a public school system." *Coles v. Cleveland Board of Education,* 171 F.3d 369, 371 (6th Cir.1999); *see* O.R.C. § 3313.47. Among these problems is the issue concerning the entrance upon school grounds or property of persons other than students and school employees. For this reason, the Ohio Revised Code set forth that, "the board of education of a school district or the governing board of an educational service center shall make any rules that are necessary for its government and the government of its employees, pupils of its schools, and all other persons entering upon its school grounds or premises." O.R.C. § 3313.20(A).

In support of their motion to dismiss Plaintiff's 1983 claims, Defendants cite to two decisions wherein courts held that parents do not have a constitutional right to attend school activities or to be present on school property. See *Cwik v. Dillon*, No. C-1-09-669, 2010 WL 5691404, at *5 (S.D. Ohio Sept. 20, 2010), *report and recommendation adopted,* No. 1:09-CV-00669, 2011 WL 379039 (S.D. Ohio Feb. 2, 2011). *Mejia v. Holt Public Schools,* No. 5:01–CV–116, 2002 WL 1492205 (W.D.Mich. Mar.12, 2002).

In *Mejia,* a parent was barred from school grounds after the school received reports that the parent had masturbated in his car while waiting to pick up his child. 2002

WL 1492205 at *1. In *Mejia,* the court held that the right to direct and control the education of one's child as mentioned in *Troxel,* 530 U.S. at 65, does not include the right to enter onto school property, "even if doing so is necessary to participate in the child's education." *Id.* at *5. The court further distinguished two Supreme Court cases, *Meyer v. Nebraska, supra,* and *Pierce v. Society of the Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), stating that those cases upheld a parents' right "to direct and control the education of their children by making the decision about where their children will be educated" and did "not extend or create a right of parents to go onto school property for purposes of participating in the child's education. The right of a parent to direct his child's education is 'limited in scope.'" *Id.* at *6 (quoting *Swanson,* 135 F.3d at 699).

In *Cwik*, a parent was denied access to school grounds by Cincinnati Public School's in-house legal counsel. Magistrate Judge Hogan issued a Report and Recommendation finding, *inter alia,* that Plaintiff's liberty interest in directing the education of [her] children does not extend to a constitutional right to unlimited admittance into or onto the building or grounds of his children's school." *Id.* In *Cwik*, the Court also discussed *Nichols v. Western Local Board of Education,* 127 Ohio Misc.2d 30, 805 N.E.2d 206 (Pike Cty Ct. Com. Pl., Nov. 24, 2003), wherein the Court examined the issues of whether parents of students in Ohio have a constitutional liberty interest to attend school activities and be present on school property and whether a board of education in Ohio may exclude persons, including parents of students, from school activities and property without formal rules and a due process hearing. *Id.* at 210. In that case, the mother of a middle school student was banned from school activities and therefore from school property due to a verbal altercation with her child's coach. The mother filed an

administrative appeal under O.R.C. § 2506.01 from the decision of the board of education which upheld the ban. The court held that "although the education and upbringing of one's children is a recognized liberty interest under the Constitution, this does not create a constitutional right for a parent to attend school activities or to be present on school property." *Id.* at *211.

Judge Hogan further noted that *Mejia* and *Nichols* are not controlling authority upon this Court. Nonetheless, he found those decisions to be more than persuasive and held that Plaintiff's liberty interest in directing the education of his children does not extend to a constitutional right to unlimited admittance into or onto the building or grounds of his children's school. *Cwik v. Dillon*, No. C-1-09-669, 2010 WL 5691404, at *6 (S.D. Ohio Sept. 20, 2010), *report and recommendation adopted,* No. 1:09-CV-00669, 2011 WL 379039 (S.D. Ohio Feb. 2, 2011). Judge Hogan further recommended that Plaintiff's substantive and procedural due process claims be dismissed and also found that the individual Defendants were entitled to qualified immunity because Plaintiff failed to establish a violation of a constitutional right. *Id.* Judge Spiegel adopted and affirmed the Report and Recommendation. *See also Ryans v. Gresham,* 6 F.Supp.2d 595, 601 (E.D.Tex.1998) ("An exhaustive review of the case law pertaining to the constitutional right of parents to direct the education of their children discloses no holding even remotely suggesting that this guarantee includes a right to access to the classes in which one's child participates."); *Justice v. Farley,* No. 5:11–cv–99, 2012 WL 83945, at *1, 3 (E.D.N.C. Jan.11, 2012) ("[A parent's general constitutional right] is limited in scope and does not include the unfettered right to access school premises.... Therefore, the court concludes that plaintiff was not deprived of a life, liberty, or property interest when he was banned

from the school campus [and calling or talking to school staff].") (citations omitted); *Miller v. Montgomery Cnty. R–II Sch. Dist., Bd. of Educ.,* No. 2:10–cv–78, 2011 WL 1299536, at *3 (E.D.Mo. Apr.1, 2011) (granting motion to dismiss procedural due process claim because a "parent does not have the right to unfettered access to school property. Therefore, the School District was not required to conduct a hearing before banning plaintiff from entering School District property.") (citations omitted); *Mayberry v. Indep. Sch. Dist. No. 1 of Tulsa Cnty.,* No. 08–cv–416, 2008 WL 5070703, at *5 (N.D.Okla. Nov.21, 2008) (granting defendants' motion to dismiss parent's § 1983 action challenging temporary school ban on due process grounds because "[t]he record is replete with decisions by courts that parents do not have a constitutional right to be on school premises."); *cf. Henley v. Octorara Area Sch. Dist.,* 701 F.Supp. 545, 551 (E.D.Pa.1988) ("[S]chool authorities could impose reasonable restrictions upon members of the public who were not students from coming onto the school grounds.... The right to come onto the school property was not such a right as to require any sort of a due process hearing before making the classification that excluded Mr. Henley.") (citing *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

Despite the cases cited by Defendants, Plaintiff argues that this case is unique because she does not assert that she has the right to direct the curriculum of her son, and she does not claim that she has a right to unfettered access to school grounds. Instead, Plaintiff contends that her complaint relates to transporting her son to and from school, and attending his special events, such as sports, celebrations and plays. However, other than citing *Troxel,* Plaintiff has not directed the Court to any authority, in

this jurisdiction or elsewhere, that establishes she has a liberty interest in attending school functions or being on school property.

Notably, a court does not engage in a procedural due process inquiry until it has been established by the plaintiff that she has a protectable liberty interest. As such, Plaintiff cannot maintain her procedural due process claim for being banned from school property. Here, the undersigned finds that Plaintiff's claim fails because she did not have a liberty or property interest in access to Rock Hill School grounds for the reasons set forth above. Namely, in order for a plaintiff to succeed on a procedural due process claim, she must first establish that she has a cognizable "liberty" or "property" interest, which she has not done. Thus, Plaintiff's § 1983 claim as it relates to the fundamental parental right must fail.

Plaintiff also claims that she was denied procedural due process for her property rights (i.e. her employment contract) when the Board interfered with her employment by forcing her to resign without just cause and without rational basis. The Board, however, contends that it never terminated Plaintiff's employment, or interfered with Plaintiff's statutory rights as a holder of a continuing contract of employment. In this regard, Defendants contend that Plaintiff voluntarily submitted a letter of resignation, which was accepted by the Board. Notably, however, Defendants do not dispute that Plaintiff has a property right in her employment contract.

At this time, without the benefit of discovery surrounding Plaintiff's alleged involuntary resignation, Plaintiff's complaint has stated a claim against the Board that her protected property rights related to her employment contract were violated.

2. *First Amendment Claims (Claims 9-12)*

Plaintiff claims that Defendants deprived her of her freedom of association by banning her from school property and that such a ban arose from an "unconstitutional law, custom or policy" of the District. Plaintiff claims that her ban from school premises and functions violated her right of freedom of speech by preventing her from communicating with her son's teachers and participating in her son's education and social activities.

Defendants contend that Plaintiff has not alleged that Defendants Hopper or Robinson were involved in any way in the board's decision to ban her from "Rock Hill Local School District Property or School functions until further written notice with prior board approval." As such, Defendants contend that no individual defendants banned her from Rock Hill premises. Notably, the Board, adopting Resolution 294-2017, created the ban. As such, Defendants argue that Plaintiff has failed to provide any factual content that the individual defendants are liable for the ban. The undersigned agrees. Notably, Plaintiff's complaint fails to identify any action on the part of the individual defendants relating to violations of her First Amendment Rights. In fact, the amended complaint does not allege any specific action whatsoever of any of the individually named defendants, except for that of Jason Guy in regards to the allegedly false accusation he made and Thomas Robinson for failure to provide the proper COBRA documentation.

With respect to Plaintiff's First Amendment violations against the Rock Hill Board, Defendants contend that Plaintiff has not supplied any factual matter to state a claim for relief under either a freedom of association or freedom of speech theory of recovery. In

this regard, Defendants' assert that "Plaintiff's claims are based on legal conclusions divorced of warranted factual inferences." (Doc. 18 at 10). The undersigned agrees.

Plaintiff does not specify how her freedom of association was violated by her ban, nor does Plaintiff alleged that she was prohibited from communicating with Rock Hill staff via telephone or electronic media. As noted above, while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Here, Plaintiff's first amendment claims are premised solely on labels and conclusions, and therefore fail to state a claim for relief as outlined in *Twombly*.

### 3. Qualified Immunity

Defendants argue that they are entitled to qualified immunity on Plaintiff's claims under § 1983. Qualified immunity shields "[g]overnment officials performing discretionary functions" from liability for civil damages "as long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Poe v. Haydon*, 853 F.2d 418, 423 (6th Cir.1988) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2735, 73 L.Ed.2d 396 (1982)). The affirmative defense of qualified immunity provides immunity only from suit but also as to liability. *See Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009).

A qualified immunity analysis involves a two-step inquiry. First, the court asks whether the facts, viewed in the light most favorable to the plaintiff, show a violation of a constitutional right. Second, the court asks whether the right at issue was "clearly

established" at the time of the alleged misconduct. *See Cochran v. Gilliam*, 656 F.3d 300, 306 (6th Cir.2011) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001)). A court may consider these inquiries in either order. See id. at 306

To be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir.2007) (internal quotation marks omitted). A defendant may raise the defense of qualified immunity in the context of a Rule 12(b)(6) motion to dismiss. *See Cockrell v. City of Cincinnati*, No. 10–4605, 2012 WL 573972, at *3 (6th Cir. Feb.23, 2012) (noting that in deciding a motion to dismiss on the basis of qualified immunity, a court must "treat[ ] all allegations in the complaint as true and draw [ ] all inferences in favor of the non-moving party").

Here, Defendants' contend that Plaintiff has not alleged any actions on behalf of the individual defendants relating to her ban from Rock Hill.  Namely, Defendants contend that case law does not support imposing personal liability upon the Superintendent, the Treasurer or the individual Board members for any action taken by their employer, the Board.  As detailed above, Plaintiff alleges that the Board voted to ban Plaintiff from Rock Hill's premises.  As such, Defendants contend that if Plaintiff has properly stated a claim for a violation of a constitutional right, such alleged violation can only be asserted against the Board.  *See Doe v. Claiborne County, Tenn*, 103 F. 3d 495, 511 (6th Cir. 1996).  Here, Plaintiff has failed to assert a basis by which Board members can be held individually liable for the action of the Board as an entity

As noted by Defendants, no individual Board member has any authority to act on behalf of the Board unless they are expressly authorized to do so by Board resolution.

Plaintiff has not alleged that any individual defendant violated any of Plaintiff's constitutional rights. Accordingly, the undersigned agrees that the individual defendants are entitled to qualified immunity with respect to Plaintiff's claims that her constitutional rights were violated.

### 4. COBRA Claim (Claim 6)

Plaintiff claims that "Defendants failed to provide notices to Plaintiff of continuation coverage to which she was entitled by law and failed to continue to provide vision and dental insurance." (Doc. 13). To the extent that Claim 6 is directed to the individual defendants, they seek dismissal of those claims.

Plaintiff alleges that Defendant Robinson failed to forward COBRA information to Plaintiff. As such, the individual defendants argue that they cannot be found liable for Plaintiff's alleged COBRA violation. The undersigned agrees. As noted by Defendants, the statutory requirement under COBRA to notify qualified beneficiaries of their right to continue health insurance coverage is imposed by the Plan Administrator. *McDowell v. Krawchison*, 125 F.3d 954, 957 (6th Cir. 1997); 28 U.S.C § 1162. However, Plaintiff has not alleged that Robinson or any other individual defendant served as Rock Hill's plan administrator, plan sponsor, or Plaintiff's employer. Accordingly, Plaintiff has failed to state a claim for relief for a COBRA violation against the individual defendants.

### 5. Punitive Damages

Plaintiff seeks punitive damages against the Board and the individual Defendants. Defendants contend that punitive damages are not recoverable against the Board as it is well established that a plaintiff cannot recover punitive damages from a political subdivision. *Hunter v. Lockland City Sch.*, No. 1:16-CV-418, 2016 WL 4471687, at *1

(S.D. Ohio July 27, 2016), *report and recommendation adopted,* No. 1:16CV418, 2016 WL 4468251 (S.D. Ohio Aug. 24, 2016). The board of education is a political subdivision. Plaintiff, however, argues that while punitive damages may not be available against a political subdivision under § 1983, they may be available against Defendants under state law.

As such, the undersigned finds that Defendants' motions to dismiss is well-taken with respect to Plaintiff's claim for punitive damages under § 1983.[1]

### C. State law claims

#### 1. Breach of Contract (Claim 5)

Plaintiff was employed by Defendants under a continuing contract of employment, she was not an at-will employee. As such, she was entitled to the protections of O.R.C. 3319.081. The statute provides that nonteaching employees holding continuing contracts may only be terminated by the board of education for "violation of written rules and regulations as set forth by the board of education or for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, or other acts of misfeasance, malfeasance, or nonfeasance. "RC 3319.081(C).

Defendants argue that Plaintiff resigned and they did not terminate Plaintiff's employment. As such, Defendants contend that they cannot be liable for breach of contract because they did not terminate Plaintiff's employment.

Plaintiff alleges that Defendants failed to abide by their obligations under O.R.C. 3319.16 for proper procedure in terminating an employee, and failed in their duty of good

---

[1] Plaintiff's claim for punitive damages under state law may be revisited on summary judgment or at trial, if necessary.

faith to abide by the terms of her continuing contract. Plaintiff alleges she was informed by Board counsel that the Board would terminate her for violating its social media policy if she did not resign. She further alleges that Board counsel informed her that if she agreed to resign, her school premises ban would be lifted. She resigned on December 20, 2017. In light of the facts surrounding Plaintiff's resignation, the undersigned finds that Plaintiff's breach of contract claim may proceed at this stage of the litigation. As such, Defendants' motion to dismiss is not well-taken in this regard.

### 2. Bad Faith Breach of Contract (Claim 13)

Defendants contend that claim 13 must be dismissed because a separate cause of action for breach of good faith does not exist in Ohio separate and apart from a contract claim. Plaintiff, however, asserts that Courts have repeatedly supported the existence of a duty of fair dealing in an employment contract. See *Woods v. Vermilion Local Sch. Dist.*, No. 3:98CV7462, 1999 WL 652019, at *3 (N.D. Ohio Aug. 9, 1999); *Newton v. Ohio Dep't of Mental Health,* 83 Ohio Misc.2d 67, 71, 679 N.E.2d 750 (Cl.Ct.1997); *Conrad v. Wooster Community Hosp.,* No. 2553, 1990 WL 163860, at *3 (Ohio App. Oct. 24, 1990) (unpublished opinion); *Brown v. Epp Mem'l Hosp.,* 41 Ohio App.3d 198, 199, 535 N.E.2d 325 (1987); *Bolling v. Clevepak Corp.,* 20 Ohio App.3d 113, 114, 121, 484 N.E.2d 1367 (1984). While the existence of a duty of fair dealing may exist, it does not create a separate cause of action under these facts. There is no separate action for bad faith or a breach of good faith while maintaining a breach of contract claim. *Lakota Local Sch. Dist. Bd. of Educ. v. Brickner*, 108 Ohio App. 3d 637, 646, 671 N.E.2d 578 (1996)(A breach of good faith does not exist as a separate cause of action from a breach of contract

claim. Instead, "good faith" is part of a contract claim and can not stand alone).  Thus, this claim must be dismissed.

### 3. Constructive Discharge (Claim 3)

Constructive discharge occurs when an employer, with discriminatory purpose, makes working conditions "'so difficult or unpleasant that a reasonable person in the employee's shoes would feel compelled to resign.'" *Kocsis v. Multi-Care Management*, Inc., 97 F.3d 876, 882 (6th Cir.1996) (quoting *Easter v. Jeep Corp.*, 750 F.2d 520, 522-23 (6th Cir.1984)). Constructive discharge from employment is not itself a cause of action. First, there must exist an underlying cause of action for employment discrimination. *Starks v. New Par,* 181 F.3d 103 (6th Cir. 1999)(citing *Kroll v.The Disney Store*, 899 F.Supp. 344, 347 (E.D.Mich.1995). *See also Blackwell v. Prod. Action Int'l, Inc.*, No. 04-cv-231-KSF, 2006 WL 3747519, at 15 (E.D. Ky. Dec. 18, 2006) (citation omitted) ("Constructive discharge is not a separate cause of action; there must be an underlying action for employment discrimination.").

As such, Defendants argue that Plaintiff claims constructive discharge fails as a matter of law because her complaint fails to include any allegations of unlawful discrimination.  In response, Plaintiff argues that sex discrimination is implied throughout her complaint.   Plaintiff further argues that Defendants' reliance on *Stark* should be disregarded because Defendants did not comply with Rule 206 because it was not recommended for full-text publication.   Plaintiff's contentions are unavailing.

Plaintiff's complaint does not contain any claim for unlawful discrimination. Further, the undersigned recognizes that Stark is an unpublished decision. However, in light of case law from Ohio, as well as other districts within the Sixth Circuit (*see* above), all

finding that constructive discharge is not an independent claim for relief, the undersigned finds Defendants' assertion to be persuasive that there must first be an underlying cause of action for employment discrimination in order to maintain a claim for constructive discharge.  Accordingly, Defendants' motion to dismiss is well-taken in this regard.

### 4. Wrongful Discharge (Claim 4)

Defendants argue that under Ohio law, only at-will employees are permitted to bring a wrongful termination/discharge tort claim based on Ohio Public policy citing *Klepsky v. United Parcel Service, Inc.*, 489 F.3d 264, 271 (6th Cir. 2006). As such, because Plaintiff was not an at will employee, Defendants contend that she cannot state a claim for wrongful discharge in violation of Ohio public policy.  Plaintiff, however, argues that Defendants' reliance on *Klepsky* is misplace.  Namely, *Klepsky* involved a dismissal on summary judgment of a worker's compensation related whistle blower cause of action. In that case, the Plaintiff was a member of a labor union, and the terms of his employment were governed by a collective bargaining agreement. However, the factual differences of *Klepsky* do not save Plaintiff's claim.  The Court of Appeals, in *Klepsky*, clearly relied on *Haynes v. Zoological Soc'y*, 73 Ohio St. 3d 254, 258, 652 N.E.2d 948 (1995)(We remain unconvinced that *Haynes* has been overruled by the Ohio courts. Because … *Klepsky* is not an at-will employee, we affirm the district court's dismissal of Klepsky's claim pursuant to *Haynes*.).  The Ohio Supreme Court in *Haynes* set forth the following:

> Within this context, we held that "[p]ublic policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute." *Greeley v. Miami Valley Maintenance [Contrs., Inc.]* (1990), 49 Ohio St.3d 228, 233-234, 551 N.E.2d 981, 986, paragraph one of the syllabus.  *Greeley* provides an exception to the employment-at-will doctrine. Thus, as stated above, in order for an employee to bring a cause of action pursuant to *Greeley*, supra, that employee must have been an employee at will. The identifying characteristic of an employment-at-will

relationship is that either the employer or the employee may terminate the employment relationship for any reason which is not contrary to law. *Haynes v. Zoological Soc'y*, 73 Ohio St. 3d 254, 258, 652 N.E.2d 948 (1995) *citing Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150; *Boggs v. Avon Products, Inc.* (1990), 56 Ohio App.3d 67, 564 N.E.2d 1128.

Here, Plaintiff was not an at-will employee and thus, can not bring a claim for wrongful discharge in violation of Ohio public policy. As such, Defendants' motion to dismiss is well-taken in this regard.

### 5. Intentional Infliction of Emotional Distress (Claim 8)

In order to establish a claim for intentional infliction of emotional distress, a plaintiff must prove "(1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress." *Phung v. Waste Mgt.*, 71 Ohio St.3d 408, 410, 644 N.E.2d 286 (1994). The issue of whether conduct "rises to the level of 'extreme and outrageous' conduct constitutes a question of law." *Meminger v. Ohio State Univ.*, 2017-Ohio-9290, ¶ 14, 102 N.E.3d 642, 645–46; citing *Jones v. Wheelersburg Local School Dist.,* 4th Dist. No. 12CA3513, 2013-Ohio-3685, 2013 WL 4647645, ¶ 41.

Defendants argue that boards of education are immune from intentional torts, including intentional infliction of emotional distress. *See Hubbard v. Canton City Bd of Edn.,* 97 Ohio St. 3d 451, 780 N.E.2d 543, 546 (Ohio 2002). Defendants further contend that the Plaintiff's emotional distress claim against the individual Defendants must be dismissed because Plaintiff has not identified any statements or actions by any individual defendant which constitute extreme or outrageous conduct – a requirement for this tort. *See Yeager v. Local Union 20*, 6 Ohio St. 3d 369, 453 N.E. 2d 666 (1983).

With respect to Board immunity, R.C. Chapter 2744 provides a three-step test to determine whether a political subdivision enjoys immunity. First, R.C. 2744.02(A) provides broad immunity to political subdivisions: "'political subdivisions are not liable generally for injury or death to persons in connection with a township's performance of a governmental or proprietary function.'" *Cosimi v. Koski Constr. Co.,* 11th Dist. No.2008–A–0075, 2009–Ohio–5892, ¶ 64, quoting *Howard v. Miami Twp. Fire Div.,* 119 Ohio St.3d, 2008–Ohio–2792, 119 Ohio St.3d 1, 891 N.E.2d 311. Second, exceptions to immunity are listed in R.C. 2744.02(B). Third, where one of the exceptions enumerated in R.C. 2744.02(B) is applicable, "a political subdivision or its employee can then 'revive' the defense of immunity by demonstrating the applicability of one of the defenses found in R.C. 2744.03." (Citation omitted.) *Walker v. Jefferson Cty. Bd. of Commrs.,* 7th Dist. No. 02JE14, 2003–Ohio–3490, ¶ 22.

Plaintiff contends that R.C. 2744.03(A)(6) provides an exclusion from immunity where the acts or omissions were (a) manifestly outside the scope of the employee's employment or official responsibilities or (b) with malicious purpose, in bad faith, or in a wanton or reckless manner. See also *Kravetz v. Streetsboro Bd. of Edn.*, 2012-Ohio-1455, ¶¶ 30-31 (plaintiff's intentional tort claims against district and board were not barred by immunity provisions for actions that arose out of an employment relationship). In light of the foregoing, at this stage in the litigation, the undersigned finds that Plaintiff has stated a claim for intentional infliction of emotional distress against the Board.

With respect to the individual defendants, the undersigned finds that Plaintiff's amended complaint contains sufficient allegations to state a claim relief for intentional infliction of emotional distress, albeit just barely since Plaintiff only sets forth vague

allegations as to the "defendants" and does not set forth any specific allegations as to any individual defendant except as to Jason Guy. As noted by Plaintiff, she alleges that by disseminating false information about Plaintiff, her character, and her veracity and by fraudulently inducing Plaintiff to resign her employment Defendants caused Plaintiff mental anguish, loss of self-esteem, and other emotional distress causing physical injury in the form of adverse health effects. Doc. 13, ¶ 60-64. Accordingly, Defendants motion to dismiss is not well-taken in this regard.

### 6. Fraudulent Inducement (Claim 14)

A party who is fraudulently induced to enter a contract may sue to rescind the contract or retain the contract and sue for damages for the tort of fraudulent inducement. *Butler Cty. Bd. of Commrs. v. Hamilton*, 145 Ohio App.3d 454, 472 (12th Dist.2001), citing Mid–*America Acceptance Co. v. Lightle*, 63 Ohio App.3d 590, 599 (10th Dist.1989). The elements of fraudulent inducement are substantially the same as those of fraud. *Huegel v.. Scott,* 11th Dist. Trumball No.2015–T–0014, 2015–Ohio–3554, ¶ 14. To prevail on a fraudulent inducement claim, one must establish (1) a false representation concerning a fact, (2) knowledge of the falsity of the representation or utter disregard for its truthfulness, (3) intent to induce reliance on the representation, (4) justifiable reliance upon the representation, and (5) injury proximately caused by the reliance. *Barich v. Scheidler Med. Grp., L.L.C.*, 2015-Ohio-4446, ¶ 18; *Ownerland Realty, Inc. v. Zhang*, 12th Dist. Warren Nos. CA2013–09–077 and CA2013–10–097, 2014–Ohio–2585, ¶ 19.

Here, Plaintiff claims that Defendants made actual and implied false representations to Plaintiff regarding the status of her employment and her access to Rock Hill Local School District premises and functions. (Doc. 13). As noted above,

Plaintiff alleges that she was told that her ban from school property would be lifted if she resigned.

Defendants contend once again that the Board is immune from this tort claim, and that Plaintiff has not alleged with particularity that any of the individual defendants said anything about her employment or her ban from school property. Again, as found above, this claim may be excluded from immunity as to the Board. However, Plaintiff's amended complaint does not contain sufficient allegations to state a claim for fraudulent inducement as to the individual defendants. The amended complaint does not allege any statements made by any individual defendants as it relates to the ban from school property. The only allegation is that counsel, on behalf of the Board, indicated that the ban would be lifted if Plaintiff resigned. Accordingly, Defendants' motion to dismiss is not well-taken here as to the Board but is well-taken as to the individual defendants.

7. *Declaratory Judgment and Writ of Mandamus (Claims 15, 16)*

With respect to these claims, Plaintiff contends that the Board removed her from payroll and violated her continuing contract, and thus seeks reinstatement to her position. Defendants' contend that the individual defendants are entitled to dismissal of these claims because they are not filed against them. Defendants further argue that the Board is entitled to dismissal of these claims because Plaintiff has not asserted a right of recovery for tort or contract liability against the Board.

The undersigned agrees these claims are not asserted against the individual defendants. However, as noted above, the undersigned finds that Plaintiff has stated a claim against the Board for tort and contract liability. As such, Plaintiff's claims for declaratory judgment and mandamus against the Board may proceed at this time.

### III. Conclusion

In light of the foregoing, Defendants' motion to dismiss (Doc. 18) is granted, in part, consistent with this memorandum opinion. Plaintiff's federal claims 1, 2, 6, 9, 10, 11, 12 brought against the individual Defendants are **DISMISSED.** Plaintiff's federal claims (claims 1, 2, 9, 10, 11, 12) brought against the Board are **DISMISSED**, <u>**except**</u> the portion of Claim 2 of Plaintiff's procedural due process claim related to her property rights (i.e. her employment contract) against the Board. Plaintiff's state law for constructive discharge, wrongful discharge, and bad faith (claims 3, 4 and 13) are **DISMISSED** as to all Defendants. Plaintiff's state law claims for breach of contract, fraudulent inducement, declaratory judgment and a mandamus (claims 5, 14, 15, and 16) are **DISMISSED** as to the individuals defendants. To be clear, Plaintiff may proceed with the following claims: Claims 2 (as it relates to a procedural due process claim), 5, 6, 7, 8, 14, 15 and 16 against the Board and Claims 7 and 8 against the individual defendants.

So Ordered.

*/s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge