**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MIRANDA GUY,

               Case No. 1:18-cv-893

   Plaintiff,

               Bowman, M.J.

     v.

BOARD OF EDUCATION ROCK HILL
LOCAL SCHOOL DISTRICT, et al.

   Defendants.

**MEMORANDUM OF OPINION AND DECISION[1]**

This civil action is now before the Court on Defendants Rock Hill Local School District Board of Education ("Rock Hill" or "Board"), David Hopper, Thomas Robinson, Mark Harper, Keith Harper, Dennis Hankins, Paul David Knipp, and Keith Roth ("Rock Hill Individual Defendants") motion for summary judgment, proposed undisputed facts and supporting evidence (Doc. 81) and the parties' responsive memoranda. (Docs. 106, 107, 113, 121).  Also before the Court is Defendants' motion to strike Plaintiff's Affidavit filed in support of Plaintiff's memorandum contra to Defendants' motion for summary judgment.  (Doc. 120). The parties have consented to disposition of this matter by the Magistrate Judge.

 **I.**   **Background and Undisputed Facts**

 For over 12 years, Plaintiff was employed as the Superintendent Secretary by Rock Hill Local School District Board of Education.  (Doc. 13).

---

[1] Doc. 153 was a draft of this memorandum of opinion and decision that was prematurely filed and removed twenty-two minutes later, as soon as the error was discovered. The Court apologizes for any confusion.

On September 18, 2017, Superintendent Wes Hairston ("Hairston") told Plaintiff that there had been allegations made against her that she had an inappropriate relationship with students. (Doc # 70-1, PAGEID # 430).  The accusations against Plaintiff were made with respect to two students. (Doc # 73-1, PAGEID # 728). Plaintiff told Hairston that she had texted with these boys on social media and Snapchat. Id.

The next day, Hairston spoke with the mother of one of the boys identified by Plaintiff. (Id. at PAGEID # 729). Hairston testified that the boy's mother told him that she and her son were uncomfortable with Guy's communications. Id. The mother told Hairston that the communications between Guy and her son appeared sexual in nature. Id.

On September 19, 2017, after consulting with counsel, Hairston informed Plaintiff that she was being placed on administrative leave. (Id. at PAGEID #730).  During her administrative leave, Guy was prohibited from being on school grounds and attending any school function. (Doc # 70-2 PAGEID # 503).

In September 2017, Guy hired Attorney Mark McCown to represent her in her divorce proceedings and to deal with the issues at  Rock Hill. (Doc # 70-1, PAGEID # 435).

Beginning on December 8, 2017, Hairston tried to set up a pre-disciplinary conference for Guy to occur on December 19, 2017. (Doc # 73-1, PAGEID# 731). Hairston testified that he called the Lawrence County Education Service Center and had a conference scheduled for December 19, 2017 at 1:00 pm. However, Plaintiff and her attorney rejected the conference. (Id. at PAGEID# 731).

Thereafter, Plaintiff testified that she was given a deadline of December 19, 2017 at 4:00 pm to resign or she would be terminated.  (Doc. 70 at p. 44).  Plaintiff testified that

she "told them to let them go ahead and fire me because I wasn't going to resign." ( Id.). The deadline was then extended to December 20, 2017 at 10:00 am. (Id.).

Plaintiff testified that she went to attorney McCown's office on the morning of December 20, 2017 to discuss the terms of her resignation.  (Doc. 70 at p. 44-45). She testified that she and her attorney discussed a list of things that she wanted included in her resignation, such as her vacation time, sick time and being allowed on school property. (Id.).

Attorney McCown then called the Board's attorney, Sue Yount, to discuss Plaintiff's resignation.  (Doc. 70 at p. 44).  The call was on speakerphone and Plaintiff was able to overhear the conversation.  (Id.).

Plaintiff was asked what Yount said in that speakerphone conversation. (Doc # 70-1, PAGEID # 436). Plaintiff testified that Yount "gave me an extension of time and said that was fine." (Id.).  Plaintiff also testified that Yount also stated: "just to fax it over to her." (Id.). Plaintiff testified that her counsel asked for the extension. (Id.).

Plaintiff's attorney the submitted her resignation letter on December 20, 2017. Hairston testified that he never offered Guy or her attorney a bargain of the nature that if she resigned, she would be allowed to come back on school property. (Doc. 73, PAGEIDE# 734.). Guy agreed that no one at Rock Hill told her that if she resigned, she would be able to come on school property. (Doc # 70-1, PAGEID # 436).

At its December meeting, the Board voted to accept Guy's resignation and to ban her from school property. (Id. at PAGEID # 449-450; Doc # 74-1, PAGEID # 779). Dennis Hankins, Paul Knipp, Mark Harper, and Keith Roth were the four Board members who participated in that meeting. (Doc # 70-1, PAGEID # 449-450).

On January 9, 2018, Luke Simpson, the Rock Hill Assistant Treasurer, contacted Michelle Barnes, the contact person at Marsh & McLennan Agency ("Marsh"), an insurance broker that administers the plan for Lawrence County Schools. (Doc # 75-1, PAGEID # 785-786; Doc # 72-1, PAGEID # 677).  Simpson notified Barnes of Guy's resignation and asked her to terminate her insurance policies. (Doc # 75-1, PAGEID # 789; Doc # 75-2, PAGEID # 816).

Guy testified that she received the COBRA notice in the mail, but she did not elect coverage because she was working for the U.S. Postal. Service. (Doc # 70-1, PAGEID # 446, 450; Doc # 71- 1, PAGEID # 545-546).

The Board and the individual Rock Hill Defendants now move for summary judgment asserting that they are entitled to judgment as a matter of law with respect to Plaintiff's remaining claims asserted against them.[2]  For the reasons that follow, the undersigned finds that Defendants' motion is well-taken.

## II. Analysis

### A.  Standard of Review

---

[2] Plaintiff's original complaint asserted the following causes of action against Defendants: 1. Violation of 1983 claim, Fundamental Parental Rights 2. Procedural and Substantive Due process 3. Constructive Discharge from Employment 4. Wrongful Discharge 5. Breach of Contract 6. COBRA Violation 7. Defamation 8. Intentional Infliction of Emotional Distress 9. Violation of §1983, First Amendment – Freedom of Association 10. Violation of §1983, First Amendment – Freedom of Association Unconstitutional Law, Custom or Policy 11. Violation of Violation of §1983, First Amendment – Freedom of Speech 12. Violation of §1983, First Amendment – Freedom of Speech Unconstitutional Law, Custom or Policy 13. Bad Faith Breach of Contract 14. Fraudulent Inducement 15. Declaratory Judgment 16. Mandamus (Doc. 13). Defendant moved to dismiss Plaintiff's claims.  The Court granted Defendants motion in part. Namely, Plaintiff's federal claims (claims 1, 2, 6, 9, 10, 11, 12) brought against the individual Defendants were dismissed. Plaintiff's federal claims (claims 1, 2, 9, 10, 11, 12) brought against the Board were dismissed, except the portion of Claim 2 of Plaintiff's procedural due process claim related to her property rights (i.e. her employment contract) against the Board. Plaintiff's state law for constructive discharge, wrongful discharge, and bad faith (claims 3, 4 and 13) were dismissed as to all Defendants. Plaintiff's state law claims for breach of contract, fraudulent inducement, declaratory judgment and a mandamus (claims 5, 14, 15, and 16) were dismissed as to the individual defendants.

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden of production, the nonmoving party cannot rest on the pleadings, but must present significant probative evidence in support of his case to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 248-49. The mere scintilla of evidence to support the nonmoving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. Id. at 252.

**B. Defendants are entitled to judgment as a matter of law with respect to Plaintiff's remaining Federal Claims**

*1. Procedural Due Process*

Plaintiff claims that she was denied procedural due process for her property rights (i.e. her employment contract) when the Board interfered with her employment by forcing her to resign without just cause and without rational basis. Defendants moved to dismiss this claim. The Court denied the Board's motion to dismiss this claim against it, reasoning: "At this time, without the benefit of discovery surrounding Plaintiff's alleged involuntary resignation, Plaintiff's complaint has stated a claim against the Board that her protected

property rights related to her employment contract were violated." (Doc # 55, PAGEID # 338).  Defendants now move for summary judgment on this claim asserting that Guy did not ask the Board for the opportunity to be heard and the Board did not deprive Guy of her employment.  The undersigned agrees.

To succeed on a § 1983 claim, a plaintiff must show that the defendant, while acting under the color of state law, deprived her of a right secured by the federal constitution or by federal law. *Markva v. Haveman,* 317 F.3d 547, 552 (6th Cir.2003). "Procedural due process prohibits arbitrary and unfair deprivations of protected life, liberty, or property interests without procedural safeguards." *Howard v. Grinage*, 82 F.3d 1343, 1350 (6th Cir. 1996). "The touchstone of procedural due process is the fundamental requirement that an individual be given the opportunity to be heard 'in a meaningful manner." *Id.*

Here, Plaintiff argues that the Board "tricked her into resigning" and "misrepresented its willingness to lift the ban against her presence on school grounds at school activities." (Doc # 107, PAGEID # 1446-1448).  In support of this contention, Plaintiff asserts that in response to her proposed termination, she responded to the Board stating that she would resign if the ban prohibiting her from attending her schools event ended.  According to Plaintiff, Defendants, acting through counsel, assured Plaintiff that they would end the ban.  As such, on December 20, 2017, Plaintiff asserts that she agreed to sign the prepared letter of resignation which the Board adopted.  However, the Board also immediately adopted another resolution banning Plaintiff from school property and school functions.  As such, Plaintiff claims she was tricked into resigning and that her resignation was involuntarily procured by the Board in violation of procedural due process.

The record contains the following relevant evidence:

On September 19, 2017, after consulting with counsel, Hairston handed Guy a letter on placing her on administrative leave. (Doc. 73 at PAGEID #730). Plaintiff agreed that Hairston placed her on administrative leave on September 19, 2017. (Doc. 70-1, PAGEID # 426). Guy testified that Hairston told her that Board counsel Yount had instructed him and the Board to put her on administrative leave. (Id.). Guy testified that she was paid during that leave (Id. at PAGEID # 443) and that she was forbidden from being on school grounds and attending any school function. (Doc # 70-2, PAGEID # 503).

Around September 2017, Plaintiff hired attorney Mark McCowan to represent her to deal with her issues with Rock Hill. (Doc. 70, PageID # 435).  Beginning on December 8, 2017, Hairston tried to set up a pre-disciplinary conference for Guy to occur on December 19th. (Doc # 73-1, PAGEID# 731). Hairston testified that he called the Lawrence County Education Service Center and had a conference scheduled for December 19th, 2017 at 1:00. However, Plaintiff and her attorney rejected the conference. Id. at PAGEID# 731).

Thereafter, Plaintiff testified that she was given a deadline to resign by or she would be terminated.  (Doc. 70 at p. 44).  Plaintiff testified that she "told them to let them go ahead and fire me because I wasn't going to resign." (Id.).  The deadline was then extended to December 20, 2017 at 10:00 am.  (Id.).

Plaintiff testified that she went to her attorney's office on the morning of December 20, 201 to discuss the terms of her resignation. (Doc. 70 at p. 44-45). She testified that

she and her attorney discussed a list of things that she wanted included in her resignation, such as her vacation time, sick time and being able to be allowed on school property.  *Id*.

Attorney McCown then called the Boards attorney Yount to discuss Plaintiff's resignation.  (Doc. 70 at p. 44).  The call was on speakerphone and Plaintiff was able to overhear the conversation.  Id.

Plaintiff was asked what Yount said in that speakerphone conversation. (Doc # 70-1, PAGEID # 436). Plaintiff testified that Yount "gave me an extension of time and said that was fine." (Id.). Plaintiff also testified that Yount also stated: "just to fax it over to her." (Id.). Plaintiff testified that her counsel asked for the extension. (Id.). Notably the deposition testimony states as follows:

Q. Do you recall anything that Sue [Yount] said in the conversation other

than giving you an extension -- giving your attorney an extension?"

A. No.

Q. Okay. Were there any other conversations that you overheard between

Ms. Yount and your counsel?

A. No.

Q. Okay. Who told you that – its throughout your lawsuit. Who told you that

if you resigned you would be able to come on school property?

A. My Attorney.

Q.  Anyone at Rock Hill ever tell you that?

A. No

Id.

8

Plaintiff's attorney submitted her resignation letter on December 20, 2017.  Plaintiff testified that her attorney wrote the letter and she signed it. (Doc. 70, PAGEID# 507.) Plaintiff's resignation letter states, *in toto*:

"I resign my position with the Rock Hill Local School District effective this date." (Doc. 70 Ex. 3).

Hairston testified that he received a copy of Plaintiff's resignation letter on December 20, 2017.  (Doc. 73 PAGEID 731).  That same day, the Board voted to accept Guy's resignation and to ban her from school property. (Id. at PAGEID # 449-450; Doc # 74-1, PAGEID # 779).  Hairston testified that he never offered Guy or her attorney a bargain of the nature that if she resigned, she would be allowed to come back on school property. (Doc. 73, PAGEID #734).

Based on the foregoing, the undersigned finds that Plaintiff has failed to establish that the Board "tricked' her into resigning and that she was denied procedural due process by the Board.  As noted by Defendants, Plaintiff was represented by counsel from the time she was placed on administrative leave to the time of her resignation 3 months later. (Doc. 113,. #12, 23, 28). Guy was offered the option of a pre-disciplinary hearing 13 days before the Board's next meeting; however, she rejected this procedural safeguard in favor of resignation. (Doc. 113, # 13). There is no evidence in the record that the Board agreed to the condition that Plaintiff's resignation was contingent on lifting Plaintiff's ban on school property.[3]  As noted above, Plaintiff testified that she received no communication

---

[3] Plaintiff filed an affidavit in support of her opposition to Defendants' motion for summary judgment. (Doc #106-2, PAGEID # 1423-24). For the first time and in contradiction with her deposition testimony, Plaintiff's affidavit states, *inter alia*:

"The next day, my attorney was advised the deadline was extended to 10 a.m. My attorney and I prepared a list of conditions under which I would agree to resign my continuing contract with the School District. The most important one of those conditions was that the ban against

from Rock Hill that indicated if she resigned the ban from school properly would be lifted. (Doc. 70 at p. 435-436).

Nonetheless, in response to Defendants' motion for summary judgment, Plaintiff argues that her resignation was involuntarily procured. A public employee with a property interest in continued employment, such as Plaintiff is deprived of that interest by her employer if the employer constructively discharges her by forcing him to resign involuntarily. *Rhoads v. Board of Ed. of Mad River Local School Dist.*, 103 F. App'x 888, 894 (6th Cir. 2004) (citing *Parker v. Bd. of Regents*, 981 F.2d 1159, 1162 (10th Cir.1992); *accord Leheny v. City of Pittsburgh*, 183 F.3d 220, 227–28 (3d Cir.1999); *Hargray v. City of Hallandale*, 57 F.3d 1560, 1567–69 (11th Cir.1995); *Angarita v. St. Louis County,* 981

---

me attending my son's school events or entering the school premises would be lifted. **My attorney and I presented these conditions, including the ban to the Board's attorney during our speaker phone conversation. She [Yount] agreed and led us to believe she would present this development to the Board at its meeting on December 20, 2017**." (Doc # 106-2, PAGEID # 1424).

Defendants seek to strike Paragraphs 3, 4, and 8 of Plaintiff's affidavit, asserting that it attempts to introduce hearsay statements from her attorney and also attempts to create a sham fact issue as it contradicts her deposition testimony. Defendants argue Plaintiff cannot cure the statement's inadmissibility by introducing an affidavit from McCown because Plaintiff's counsel confirmed in writing on June 22, 2020 that she will not be calling McCown as a witness. (Doc #119, PAGEID #1540-1541). Counsel for Defendants contend that they relied upon that representation from Plaintiff's counsel and cancelled McCown's deposition which had been scheduled for June 30, 2020. (Id.). Since McCown cannot testify about these matters, only Plaintiff can testify about what she said to Ms. Yount or heard Ms. Yount say. Plaintiff has testified on these matters and her prior deposition testimony directly conflicts with her affidavit testimony.

It is well established that "a party cannot avoid summary judgment through the introduction of self-serving affidavits that contradict prior sworn testimony." *See United States ex rel. Compton v. Midwest Specialties*, 142 F.3d 296, 303 (6th Cir. 1998) (citations omitted)). In the alternative, even if considered, the statements contained in Paragraph 4 of Plaintiff's affidavit fail to establish a triable issue of fact with regard to Plaintiff's procedural due process claim. Plaintiff asserts that Yount led them to believe she would present the conditions to the board. There is no evidence that such conditions were, in fact, presented to the board, nor does this statement establish that Yount stated that the board would agree to plaintiff's conditions. As detailed below, the facts establish that upon advice of counsel, Plaintiff voluntarily resigned.

F.2d 1537, 1544 (8th Cir.1992); *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 173 (4th Cir.1988)).

If Plaintiff resigned of her own free will, however, "even as a result of the defendant's actions," then this Court must find that Plaintiff voluntarily relinquished her property interest in continued employment-meaning she was not constructively discharged-"and the defendant cannot be found to have deprived [her] of that interest without due process of law." *Rhoads*, 103 F. Appx at 894.

Generally, employee resignations are presumed to be voluntary. *Id.* at 895 (citing *Leheny*, 183 F.3d at 227). An employee may rebut this presumption by producing evidence indicating that the resignation was involuntarily procured. *Id.* There are two circumstances in which an employee's resignation will be deemed involuntary for due process purposes: "(1) when the employer forces the resignation or retirement by coercion or duress, or (2) when the employer obtains the resignation or retirement by deceiving or misrepresenting a material fact to the employee." *Leheny*, 183 F.3d at 228 (*citing Hargray*, 57 F.3d at 1568).

When assessing whether a resignation was obtained by coercion or duress, the inquiry is whether an objectively reasonable person would, under the totality of the circumstances, feel compelled to resign if he were in the employee's position. *Rhoads*, 103 F. App'x at 895 (citing *Yearous*, 128 F.3d at 1356). Relevant to this inquiry are several non-dispositive factors, including: (1) whether the employee was given an alternative to resignation, (2) whether the employee understood the nature of the choice [she] was given, (3) whether the employee was given a reasonable time in which to choose, and (4) whether the employee could select the effective date of resignation." Id. (citing *Lenz v.*

*Dewey*, 64 F.3d 547, 552 (10th Cir.1995)). Whether the employee had the advice of counsel is also a factor considered by other Circuits when assessing whether an employee resigned voluntarily. *See Hargray*, 57 F.3d at 1568 (citing *Stone*, 855 F.2d at 174, 177. *See also Angarita*, 981 F.2d at 1544; *Parker*, 981 F.2d at 1162; *Schultz*, 810 F.2d at 1136; *Scharf*, 710 F.2d at 1574).

> The mere fact that an employee is forced to choose between resignation and termination does not alone establish that a subsequent choice to resign is involuntary, provided that the employer had good cause to believe there were grounds for termination. On the other hand, an employee resigns involuntarily if, after being given a choice between resignation and termination, she is not granted sufficient time and opportunity to deliberate about the choice.

*Brown*, 638 F.Supp.2d 856, 863–66 (S.D.Ohio 2009) (citing *Rhoads*, 103 Fed.Appx. at 895 (internal citations omitted). *See also Harris v. Butler County, Ohio*, No. 1:07CV069, 2008 WL 4186316, *7, 2008 U.S. Dist. LEXIS 86385, at *19 (S.D.Ohio Sept.3, 2008) (relying upon same voluntary resignation tests)).

Here, under the totality of circumstances and considering the factors outlined in *Rhoads* and other relevant case law, the undersigned finds that Plaintiff's resignation was not involuntarily procured.  As detailed above, Plaintiff was represented by counsel after she was placed on administrative leave in September 2017, until the time of her resignation in December 2017.  Plaintiff was offered the option of a predisciplinary hearing 13 days before the Board's next meeting; however, she rejected this procedural safeguard in favor of resignation.  The undersigned recognizes that the alternative to resignation was termination.  However, Plaintiff and her attorney were granted extra time to submit her resignation and had at least 24 hours in which to negotiate the terms of resignation.  Moreover, as noted above, Plaintiff testified that she received no

12

communication from Rock Hill that indicated if she resigned the ban from school properly would be lifted.  (Doc. 70 at p. 435-436).

Such facts are not in line with cases in which Plaintiffs have overcome the presumption that a resignation was voluntary, such as case where a plaintiff was subject to time pressure, isolation, or denial of requests to speak with counsel or representatives. See, *Parrish v. City of Wilmington*, 3 F.Supp.3d 688 (S.D. Ohio 2014) (finding constructive discharge where employer did not advise employee of his rights; cornered him with the possibility of losing unemployment benefits; told him they needed an answer for that evening's meeting; and plaintiff did not sign the resignation letter or choose the date of resignation); *see also Paroczay v. Hodges*, 297 F.2d 439 (D.C.Cir.1961) (finding resignation involuntary where the employee was told he had to sign a resignation letter before he left the supervisor's room, or charges would be filed immediately, despite his repeated requests to have more time and to consult an attorney); *Angarita v. St. Louis County*, 981 F.2d 1537 (8th Cir.1992) (finding resignation involuntary where employees were: not permitted to leave the interrogation room without first signing a resignation form; not presented with a specific complaint of their actions; denied requests to speak with their supervisors or have them present; threatened with disclosure of the allegations to their family; threatened with publicity in the media; and were not told the source of the allegations, among other things).

Here, the undersigned finds that Plaintiff has failed to present sufficient evidence the she was denied sufficient process. As noted by Defendants, neither Plaintiff nor her counsel ever requested a hearing on her employment. (Doc. 113, # 21). Plaintiff rejected a pre-disciplinary conference. (Id. at # 13). Plaintiff's resignation letter does not contain a

contingency clause outlining that her resignation is subject to the ban on school property being lifted.   Notably, had Plaintiff not resigned, the Board could only terminate Guy's continuing contract by a majority vote for one or more of the following reasons: "violation of written rules and regulations as set forth by the board of education or for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, or any other acts of misfeasance, malfeasance, or nonfeasance." R.C. 3319.081 (C).  This process did not occur because Plaintiff chose to resign.

As noted by Defendants, the above statute requires the Board to serve Guy by certified mail with a copy of their action of terminating her employment. Upon receipt of this document, Plaintiff would have the right to file a written appeal in common pleas court within ten days of the Board action of terminating her employment. *Id.* Guy did not file an appeal because the Board never terminated her.

Plaintiff argues that the Board consistently claimed to know little or nothing about the allegations made by the students and moved to terminate her before reviewing the evidence in violation of her due process rights.[4]   This assertion is misplaced.  Plaintiff had the statutory right to only be fired for a reason listed in the statute, and, if that occurred, the right to appeal her termination. Plaintiff did not avail herself of the procedural safeguards which she enjoyed as a tenured nonteaching employee, because she decided, upon consultation with her counsel, to resign her employment. As such, Plaintiff has failed to show that her contract was terminated without any procedural safeguards.

---

[4] Plaintiff also devotes considerable attention to the alleged actions of Defendant Jason Guy despite the fact that Plaintiff's claims against him are not the subject of the Rock Hill Defendants' motion for summary judgment. (Doc # 107, PAGEID # 1434-1438).

14

In light of the foregoing, the undersigned finds that the Board is entitled to judgment as a matter of law with respect to Plaintiff's procedural due process claim.

### 2. COBRA – Claim 6

The Board also seeks summary judgment on Plaintiff's COBRA claim.  As detailed above, Plaintiff contends that Defendants failed to provide notices of continuation coverage to which she was entitled by law and have failed to provide vision and dental insurance to Plaintiff. Plaintiff's initial complaint asserted this claim against all defendants. Defendants moved to dismiss this claim and the Court dismissed this claim as to the individual defendants.   Thus, Plaintiff's COBRA claim against the Board survived. Defendants now move for summary judgment on this claim against the Board.

Pursuant to the Consolidated Omnibus Budget Reconciliation Act (COBRA), the employer of an employee under a plan must notify the administrator of a qualifying event, such as termination, within 30 days of the event.  29 USC 1166(a)(2). It is then the obligation of the plan administrator to provide notice of continuation rights to the employee." *Bruno v. United Steelworkers of America*, 784 F.Supp. 1286, 1318 (N.D., Ohio, 1992), affirmed, *Bruno v. United Steelworkers of America*, 983 F.2d 1065 (6th Cir. 1993). An argument that an employer shares this obligation with the plan administrator is "contrary to the express language of the statute, 29 USC 1166(a)(2), (4)(A)." *Id.* at 1319. The statutory requirement under COBRA to notify qualified beneficiaries of their right to continue health insurance coverage is imposed by the Plan Administrator.  *McDowell v. Krawchison*, 125 F.3d 954, 957 (6th Cir. 1997); 28 U.S.C § 1162.

The record evidence establishes that Robinson serves as the Treasurer for the Rock Hill Local School District. (Doc # 72- 1, PAGEID # 674). Rock Hill's health insurance

is through a consortium called Lawrence County Schools. (Doc # 75-1, PAGEID # 785).

Rock Hill is not the Plan Service Provider or Plan Administrator. (Doc # 75-2, PAGEID #

822).  The Plan Administrator is Lawrence County Schools. (Id.) Marsh & McLennan

Agency ("Marsh"), an insurance broker, administers the plan for Lawrence County

Schools. (Doc # 75-1, PAGEID # 785-786; Doc # 72-1, PAGEID # 677).  Michelle Barnes

("Barnes") is Rock Hill's contact person at Marsh. (Doc # 75-1, PAGEID # 786; Doc # 72-

1, PAGEID # 677).

On January 9, 2018, Luke Simpson, the Rock Hill Assistant Treasurer, contacted

Barnes, notifying her of Guy's resignation and asked her to terminate her insurance

policies. (Doc # 75-1, PAGEID # 789; Doc # 75-2, PAGEID # 816).

With respect to the Board, Plaintiff claims that "a triable issue of fact remains as to

whether Defendants provided notice to the Plan Administrator of Ms. Guys termination

within the mandated thirty-day time period." (Doc # 107, PAGEID # 1444). Namely,

Plaintiff contends that there are two versions of an email that Assistant Treasurer Luke

Simpson sent to Michelle Barnes. (Id. at PAGEID # 1445).

Specifically, Plaintiff alleges:

> "Defendants have referenced through their Proposed Undisputed Fact #46
> an email that Luke Simpson purportedly sent to 'Michelle." There are two
> different versions of what appears in that email. On one, the date has been
> obscured and is indecipherable-although the rest of the email is clearly
> legible; on the version, the margins are aligned to the left. On the second
> version, the date is visible, but the sender's name, the date, and the
> recipient's name are all indented, not aligned as they were in the
> indecipherable version. Also, the second version contains a check mark
> next to the date. Crucially, neither of the two emails contains the year. Thus,
> the question of verification of the transmission date is not resolved. The date
> is the foundation of the Defendant Board's contention that it has met its
> COBRA obligation. Defendant Board failed to offer an affidavit from anyone
> named Luke Simpson.

(Doc. 75, internal citations omitted)

Defendants, however, assert that there is no fact issue or authentication issue surrounding the January 9, 2018 transmission from Rock Hill.  In this regard, Defendants contend that prior to responding to the instant motion for summary judgment, Plaintiff's counsel received a copy of the January 9th email, which was marked as Robinson Depo. Exhibit 12, on no fewer than 3 occasions. The first occasion was at Mr. Robinson's deposition on November 15, 2019. (Doc # 72-1, PAGEID #677). Plaintiff's counsel questioned Robinson about this document at his first deposition. (Id.).

The second occasion was on July 15, 2020 when counsel for Defendants sent Robinson Depo. Exhibit 12 and "Pl Personnel File Excerpts.pdf" to Plaintiff's counsel, informing her that these documents might be used as exhibits at Mr. Robinson's second deposition. (Doc # 119, PAGEID #1541). The date of the transmission was legible on Plaintiff's Exhibit 12 and the January 9, 2018 email attached as the first page of "Pl Personnel File Excerpts.pdf." (Id.). Both "versions" of the January 9th transmission were sent to Plaintiff's counsel. (Id.).

The third occasion was at Mr. Robinson's second deposition on July 16, 2020 when Plaintiff's counsel had every opportunity to question him about this document, its transmission, and any other alleged issues with it. The alleged second "version" of the transmission was marked by Plaintiff's counsel as Exhibit B along with other personnel file documents produced in response to Plaintiff's subpoena duces tecum. (Doc # 72-1, PAGEID # 789; Doc #72-2, PAGEID # 816, 826). At his second deposition, Robinson was also asked to describe Exhibit 12. Robinson identified January 9, 2018 as the date of the email, stated the sender and receiver of the email, and read the contents of the email.

(Doc # 72-2, PAGEID # 787). Later in his deposition, Robinson again stated that the email was sent on January 9, 2018. (Id. at PAGEID # 790). Robinson also testified that he was aware that his assistant Luke Simpson had sent the email. (Id. at PAGEID # 789). Robinson also authenticated Exhibit 12 as a document kept in the ordinary course of business. (Id. at PAGEID # 790).

Upon careful review, the undersigned finds that there are no fact issues surrounding the January 9, 2018 email. The evidence of record clearly establishes that there is one version of the email, as detailed above, it was properly authenticated and identified on numerous occasions.  The undersigned recognizes that the date may have been illegible on certain copies of the document that were scanned repeatedly, however, the testimony clearly establishes the email was sent on January 9, 2018.  As such, the undersigned finds that Rock Hill presented sufficient evidence that it satisfied it obligation under the statute of notifying the plan administrator within 30 days. (Doc # 81, PAGEID # 894-895). Accordingly, the Board is entitled to summary judgment on this claim.

### III. Conclusion

In light of the foregoing, Defendants' motion for summary judgment (Doc. 81) is **GRANTED** with respect to Plaintiff's claims under Federal Law.  Defendants motion to strike (Doc. 120) is **DENIED** as moot.  Because Plaintiff's federal claims asserted against Defendants should be dismissed, the Court no longer has original jurisdiction and declines to exercise supplemental jurisdiction over any pendant state-law claims asserted against them. See 28 U.S.C. § 1367(c)(3). Accordingly, Plaintiff's any state law claims are **DISMISSED without prejudice and this matter is closed.**

**IT IS SO ORDERED.**

_/s Stephanie K. Bowman_
Stephanie K. Bowman
United States Magistrate Judge